All right, our third and final case this morning is 2073, Don Doe 2 v. North Carolina State University We're going to start with Don Doe 2 Rob Murphy abused numerous male student athletes under the guise of fighting them. Many, including Don Doe, athletes and coaches warned the senior associate athletic director that Murphy was engaging in sexual abuse. After this grave breach of trust, NC State asked the court to hold that such a warning was not enough to put it on notice of an obvious misdemeanor. That it needed specific knowledge from a specific act of police defense. Because that's not the law, and because it shouldn't be the law, this question is reversed. The district court dismissed on the basis of actual notice. The actual notice here, I think, is quite clear. When a coach says that a trainer is engaging in sexual abuse of male athletes. Engaging, in the present tense, in the gerund form of diverge. Athletes plural. That's very explicit. The school, when it's made to an appropriate person, puts the school on actual notice. I think a recent opposing counsel's argument to be that sexual grounding somehow does not equate to sexual harassment under Title IX. What's your response to that? There are two responses to that. The first is that I think that it is. We can talk about that. Well, let's talk about that then. I think that it is. I want to know why you think that it is. Yeah, I think that it is because if you look at what, you know, we cited sort of a definition from a notable outside advocacy group, about what grooming is, you can hear a lot about bisexuality. Predatory, it means preparing someone for coerced sexual conduct. And it's, you know, especially again when it's modified bisexual, it reflects that Finley, the coach, would make an appropriate argument. It's predatory, preparing athletes for abuse. Use of sexual grooming is more obvious than listing a list of grooming behaviors. The conclusion has already been drawn about exactly what it is and what it's doing. And so I think it is sex-based discrimination. That's the first answer. The second answer, though, is that I actually don't think that it needs to be on its own. It's a timeline violation itself. What matters at the bottom is whether it's providing notice to the school of what the obvious risk is, right? And that's the Kuhn formulation. If it must have put, it's not constructive, but if it must have put a reasonable person on the risk going forward, that's not a risk. So, you know, again, Judge Sarkar, I agree with you that it is itself, you know, it is itself sexual abuse, right? But it's actually not important whether it is or not. It doesn't matter. The fact of the matter is that the quality is sex-based. And so, probably by the century, we're going to get quite well through the way. It's incompetent to conduct some form of discrimination. It might be considered indiscriminate, but it would not be discriminatory. Some of which, obviously, would be much more so. And so, you should clearly, you know, just be sure that you find the one that's most favorable to you. And say that that's plausible. That includes the sole right to conduct. Yeah, I think that's right, Your Honor. And I think that, you know, one of the things that's, I think, especially hard here is that it is a motion to dismiss instead of a summary judgment. You know, actual notice itself, you know, this Court has talked about it in Koon. This Court has talked about it in Fairfax. Obviously, you know, it matters exactly what that report is communicating, right? But I think at this stage, where there hasn't been, you know, you don't have the Senior Associate Athletic Director having testified to what you understood it to be or what coach, you know, whatever. The inference, I think, has to be that it's the most serious possible version. Again, especially when it's modified by the sexual. I think the inference has to be the fair inference in the non-moving parts favor at this stage has to be the most serious possible version of it. And again, when it's modified by sexual, that makes it, frankly, an easier question to answer. It's not just engaging in grooming, it's engaging in sexual grooming. Which I think makes it harder to say that it's sort of an inference about the innocuous, you know, inappropriate comments like, you know, liking social media pictures. That's right. Again, so I think engaging in sexual grooming is sex-based discrimination, but it doesn't have to be sexual. You know, I think that, you know, the school's proposed rule, I think, is a problem, right? No one wants to sort of live in a world where a school gets a report like this and has no responsibility to do anything less. A trainer like that has ongoing sexual abuse. But if, you know, the senior associate athletic director knows our being groomed or at risk of ongoing sexual abuse, I think that's just a problematic rule. You know, there's probably on the outside, since our president seems to require more of that. We're talking about sexual harassment, which is not uniquely in our state. We consider it as a discrimination of race or gender.  It's not the same environment we're in for harassment and contact. So what's the difference? And that sexual grooming, it's not only sexual grooming, it's an isolation of this present world. I think that the, I mean, I think I have a couple answers to that. Specifically, the allegation of engaging in sexual grooming of male athletes in this world, right? And so I think that on its own is enough to sort of denote that there's an environment for problems, right? But the second is that the sexual grooming itself, again, when you think about what's going on, right, which is a trainer who has access to a lot of athletes, especially who are receiving medical treatment in often very vulnerable conditions. I think that is just a back and forth thing that, you know, is enough. It's severe, possibly pervasive because of the number of athletes involved. And I think if you look at what actually happens, probably, yes, sorry. And I would say certainly, right? And I think that, again, when the inference, it's not even an inference, right, there are numerous athletes that have subsequently come out and said, you know, there are at least three cases that were filed. You know, this was not an isolated incident. I think it's a fair, I think it's a very fair inference in context that this was, you know, even if you take the sports position at face value, I think this is important. Especially for the state. For me, anyway, the more problematic problem, problematic aspect of this case, and one that we report to the rest of the committee, they will assume that there is direct evidence that, yes, they are in good, for reporting purposes. And I'm just, you know, I'm concerned that, first of all, I don't think it's been pointed out that this is happening, but it certainly is on the law now. So, other than the title, so what is it about the allegations that exist that, you know, are occurring with this individual? Yeah, I think, I agree with you. I mean, first of all, the district court didn't, sort of assumed it did not decide on that basis, but again, I think it's important to talk about. I think that the plaintiff is an appropriate person because, based on his, again, as you know, his title, and his role in the athletics department, he had authority to take corrective measures. Thank you. I mean, I think there's cases like, you know, Grabowski, Morrell, Kesterson, there's certain things to talk about. The apex figure, the senior associate athletic director, is extremely high up in the athletic department structure. However, then I was going to say, though, that, however, the more important difference here is going to be drawn from the plaintiff. The plaintiff talks about, after the report, Murphy had duties adjusted to reduce, although obviously not eliminate, the access to male athletes. And that's an allegation against the plaintiff. But that wasn't immediately after the report, right? That was like a year and a half after the report. So why isn't that too tenuous to make the connection that you want it to make? So, the reason that the delay did not matter, first of all, that's a difference that would be drawn against us at the booting stage, right? And, you know, we cited the Federal Register, college bureaucracy, you know, the notion of the due process in the course of how schools deal with all of this stuff. And so, talking about, you know, if this comes down to, you know, plausible inferences to be drawn about the delay, that has to be drawn in our favor. It doesn't matter, actually, if there's a more plausible inference. It only matters that our inference that we're asking for is plausible. I would call it a misrepresentation of speculation. No, I agree with that. And I think that, again, when the complaint specifically says that his duty to reassign to reduce his access to male student athletes, I just think that that's a package. I think that's enough. Since 2017, you're saying that your reference, that he was assigned in 2017, but he was promoted in 2018. Yeah. And that seemed to cut against the fact that at least the question about the interest that he would include in the problem. Athletes, when you turn around, right, athletes make sure that they're promoted. Again, I think it's available to several inferences. The inference has to be drawn in our favor, right? If between having a duty to reassign and the promotion, it's intended to keep him behind a desk and reduce his access to athletes, I think that's enough. And whether it comes out as, you know, this is the kind of thing that Discovery is for, right? If there are multiple plausible competing inferences, you know, I think that's enough. But there are competing allegations in your complaint. You know, you want us to make the causal connection about Murphy's reassignment, but then you also allege that Clink stills either disregarded Finley's report or concealed it from the athletic director or the Title IX coordinator. Those are inconsistent. Yeah. I think part of the problem here, you know, the complaint also talks about how there is this report that exists, that one of the other students who was appointed in a companion case that's both still alive in the district court and also consolidated in front of this court. It talks about how there is this report that exists. It talks about all of this. You know, John Doe, and I think only alleging the type of things that he did. And I think that, you know, there's multiple, you know, I think that a fair reading of the complaint, including the allegations, is that a report was made to the senior associate athletic director. The senior associate athletic director adjusted the duties. Either he told someone, I think there's two pot points here. Either he just adjusted the duties on his own, which is a no. That means he had authority to take corrective measures, which is what the standard is. Or that allegation, he actually did tell someone who did have authority to undertake corrective measures. And that person did. And so I think that the, you know, the key inference here is based on the adjustment or reassignment. In fact, that's more of a notion that the diversity is more representative. So the, you know, this court's decision, and we were circuits, you know, the first circuit Paul, the circuit today, you know, it's not just that you have to take some action. If you take an action that is entirely ineffective, that's not enough. And I think that here where you're still allowed to have access to at least some athletes, including entire teams, including John Doe's team, it's certainly deliberately, it's plausibly alleged at this posture, deliberate indifference to, at least to those athletes. And,  I would know that the reassignment issue, how is it that the allegations of the complaint support that themselves are to take corrective action. Again, I can be inference based on his title and the allegation that corrective action was taken out the corrective action. So it's just his title. Well, and the fact that he received the report, he has a very senior position, corrective action.  the title is senior.  Yeah. And corrective action was taken. So I think it's, I think it's fair. Like the allegation is that there was a fit, which means exactly the report that was made and readjusted. And so I think that's, I think, I just think that's an obvious thing to draw. And again, just to come back to sort of this question. Yeah, I think, I think that's a fair, I think that's a fair thing to draw. You know, I guess I'm also, you know, there's a fourth case from not this circuit, but the circuit, that the fit of a remedy in the stated problem itself is, it supports a different, and I think, I think that case was, you know, there's a risk to male athletes, an allegation that they reduced access to male athletes, including entire teams, and gave them more desks. I just think that's fair. It's all important. So I guess, what's it, say, considering your own, you know, yeah. Yeah. Of course, this report. Yeah.  would it be appropriate, then, and that's allowed to occur. Yeah, I think that's, I guess,  I think that's correct. And I think, you know, one of the other things that's a little complicated here is that as you'll notice, the district entered the order, you know, there was no first complaint. And there's the opinion, and there's judgment on the same day.  you know, it's violent as to whether or not it's prejudice, but enter judgment, and close it directly. But I think that if what is going on here is that this, this board has some concerns about the sufficiency of the meeting. I think you're exactly right. The right answer would be to revamp the instructions for, um, to allow them to complain, to identify, or to correct the deficiencies. And the complaint, because at the very least, what's going on here is that you're not looking at, um, you're not looking at a complaint where it's futile to, you know, futile to revamp, and they would still be able to state a claim based on what they're, even if, again, the complaint has this. We're done temporarily. Well, it's reckless. Well, I don't think it does. I think the reason one of them is that in that case, um, the person who was alleged to have later had done the firing, you know, I've been evaluated. The point of that is that that person. Right. And so I think that in that case is, you know, and we wrote about this, but I think it's just that reason. And again, I think there's a separate problem here. We do is that college bureaucracies are different than sort of. You know, this part is obviously seen, um, you know, all their kinds of suits in the college context where, um, due process has not been allowed to play out appropriately. And so I think, um, here it's, it's a longer, a longer delay or duration. It's much more, much more understandable. All right. Thank you very much. Thank you. Good morning. You can see. Neither NC state nor. We're here today. Whether plaintiff stated a claim. Is this report correctly? There's a comment about something that you did not hear. Not just sexual. That did not provide the actual. I'd like to begin by addressing. Your honor raised about. In this case, the Joe, this is Joe too. It was the 3rd case filed in a series of cases. The 1st case was filed 6 to 8 months before. The motion to dismiss in law is fully free before this complaint was ever. The plaintiff has a benefit for his arguments and could then craft that complaint to be the best. It could be based on those. There was a 2nd, she was doing that. After we. Again, plaintiff did not choose to amend that. Instead, when we agree. Third, the court in the. This work will look at the order entered by the district court. That's that joint appendix 37. The court dismissed this without prejudice. The court did direct the. But this board in its grit versus. That's out. What happens when a court dismisses without prejudice, but does not explicitly invite. He has this question. Back. As far as. It is important to not address that at all. Assume. Some level of concern. In fact, we did not. First instance. Question. No, your honor, because that issue is thoroughly briefed. Yes, we're exactly. Judge did not address that issue and decided that because this could be decided. Or it can be decided on actually. This report. Here. Six. Young. What's up? They seem. Pressing. Less. And then you even have some action. You have someone at the allegations. In terms of. Not be around. That at least. This person could take. Which is. In other words, can you do something? And it looks like. That you could do something.  Six. Twelve.  Is she. Of that inference. Interests. Your honor. Yes, sir. And Jenny. Very clear. That the official must have authority to address discrimination. Institute. They make very clear. That's part of the conversation. Real. That's that. That's the point. And make that clear. What's not being clear here is that we get up and look at the inferences here. No difference. It's challenging that. That's the question. In a way, that we can say, well. No, your honor. We can't make that. The court, the 10th circuit in Europe says that a title does not define what someone's authority is. Each institution has different titles. We don't know how many senior people there are in this department. We don't know what authority that person has. The complaint. You are bound by the four corners of the plane. And there's no actual allegation regarding scales. Other than. You don't know.  yes, your honor. But that's the plane. It's obligation. As the district court said, in the most persistent state case, it's not a daunting task to include those facts. But plaintiff denied. Even though. Multiple opportunities. And to amend. After the complaint. Of course, that means we cannot make an effort. So there's no reasonable efforts that can be made. Not that he said.  Well, six problems. No, your honor. This court can't under all. We can make possible. We have to have to cross the line between the possible and plausible. It's a possible influence, but there's nothing in the complaint in the four corners of the complaint. To raise that from a possible inference to a plausible inference. We're using the language. In reasonably. That's just. No, your honor. It doesn't. It says nothing about what sort of authority. It's only this title. I know. Well, we can, we can include actual notice because the job duties were changed. But your honor, that was an 18 month period between the time that the allegation. The report was made to point scales, and the time the job responsibilities were changed 18 months. As this court said, in Roberts, for Cisco and industries, it not only did the facts of that case, look at whether that was a proper. Look at that. Oh, you can get like, you know, you didn't directly say. But it alleged that he wasn't born. That is knowledge. Of murderous conduct. The fact that we conferred actually notes. I was. I can take an inference in that. Conferred from that. Well, because the inference, the plaintiff asked me to say is there was an 18 month period that those job duties will change. And plaintiff says universities. It takes a while to go through that process. We can infer there was an investigation. But your honor, that's exactly the stacking of inferences that this court in stone versus Liberty Mutual in and can set cannot be done. Furthermore, your honor is one of the allegations. In plaintiff's complaint, paragraph 72 C. Joint appendix 26 plaintiff says there was no investigation. The plaintiff is asking this court to not only staff inferences to merely speculate regarding why there was a 18 month period. But to do that, to then conclude that that's at odds with their own allegation. And his complaint, we have to look at the four corners of this complaint. We also find the same problem with the actual notice here. The allegations in the complaint are that Finley told plain scale that Murphy was engaging in what's suspected. Suspicions are simply not sufficient as the district court held. Why is it not sufficient? What is what? Coach Finley has said without respect that Murphy is sexually assaulting student athletes. That's still a suspicion with North Carolina State has done nothing. Well, your honor, it is a suspicion. It's closer to the rumor and gossip of paradox, but even sexual assault. We look at the court in Ross versus University of Tulsa. Says, when you look at whether an allegation of notice is too vague, you look at the facts, the who, the what, the when, the where. The university needs a number of those facts and you can verify. So, so to answer my question, if Coach Finley has said, I suspect that Murphy is sexually assaulting, sexually assaulting student athletes, North Carolina State under your reading of the case law, didn't need to do it.  your honor, that is a much closer to, to notice. It's still hard, but I think that, that is a, a, yeah. How do you define sexual? Your honor, that's the problem. There is nothing in the complaint to define sexual. It is a vague term. It's a label. It's ambiguous to use this. If we were talking about fleeting standard, it all talks about a naked assertion, void of factual enhancement, grooming. That's the problem. If there's something about the phrase sexual grooming, that is enough. That doesn't give some indication that it's predatory. But what is the goal of sexual grooming? Well, your honor, it is a very charged term.  I agree with that. The problem is that it is not defined. There are no facts in the complaint that tell us what it was. So Coach Bentley provided a suspicion of a very charged term, and North Carolina State was not on notice that, that there might be an issue. Is that your argument? Not for Title IX. I think we can probably all agree that there should have been, there should have been some more questions asked, or there should have been something done. If Coach Bentley said, instead of I suspect, just leave off the I suspect. Murphy is sexually grooming student athletes. Would that have been sufficient notice for the university? Well, your honor, these are not the facts we have here. Your problem is with the word I suspect. It's with both suspect and grooming. So sexual grooming would be fine. An allegation of sexual grooming would be fine for North Carolina State? It is not fine for North Carolina State. But it does not provide the actual notice that Title IX says that it has to be provided. So what would Coach Bentley have needed to say in this circumstance to provide actual notice to the university? Well, we don't know your honor, because we don't know any facts beyond this. But there would have needed to be notice of sexual harassment, of sexual misconduct. And sexual grooming is not sexual misconduct in the view of North Carolina State University? Your honor, this court and I here must look at the complaint itself. And there's nothing in the complaint to say what that sexual grooming is. Sexual grooming could be any number of things. And so because we have no other facts to provide that enhancement, that factual enhancement, the court is left with the same issue that it was on the appropriate authority. The complaint is simply not sufficient to provide that notice required under Title IX. Does it matter? Given the fact that it is a charged term and there is a record of conduct, which has been stated, that individuals from the state are not licensed in the United States, in New Orleans, or in the Philippines, or in the Philippines, most, if not all, the cases that you have indicated, or to some extent, the state, why doesn't the plaintiff get the benefit of the fact that the plaintiff has the opportunity to report these cases? Because, your honor, that's what courts in big fall and small legal said is not the case. That plaintiffs must come forward with enough factual enhancement for the court to get that conclusion. If we literally took that to its full result, we would see that for every 12 v. 6 case. Every 12 v. 6 case, we would sit back and say, let's let discovery play out and see what the facts are, and see whether there's a claim here. There are certain cases, however, in which people who are in the sector, and I'm a member of the sector, and I've had a lot of cases. It's not like the drug case we talked about earlier. I mean, the problem in big fall, the problem is that it changed the world. I'm not proving that, but as a judge, as a ruling team, when you use a term, you say, we don't have all the facts. We don't know. But the term is there. I mean, that's what discovery is for. That is what discovery and judgment then comes up in the deal with it, as opposed to pleading. You say, well, you just made the speculation of students. He didn't just say students. He said student athletes, which tells you there's more. It's like a pattern. And you've got a senior person who is entitled to telling someone else that, quote, I'm going to give this to a senior person. And the question, just going back to the sector's question, is what is the response to that? And let me just also point out when you mentioned the Fairfax case, the Doe versus Fairfax case, in that case we made clear that the possibility of a sexual harassment relationship is sufficient to put that school board among them. Fairfax is pretty much a game changer on that. Right now, it's still good law. I don't really think it's changed that. So, I mean, doesn't that apply here? And this, again, went 12-6. I would say when you get into summary judgment, you know, that's a tough case. I think there are some facts that could come out. But it can come the other way, too. But 12-6 is just that. I don't think it's all automatically intended to keep plaintiffs out for it because of specific type things that it would have in this type of case. What do you think? Well, and I apologize, Your Honor, you said something in the beginning that I did not. I'm sorry. That happens to me all the time. But there is not enough here based on Iqbal and Twombly. If we go back to the district court, if we look at the facts and guesses, the facts and guesses, the allegation was that parents had come forward and had made complaints that the teacher wasn't making the right decisions. No, it's a summary judgment case, Your Honor. Did that change?  You taught me. Summary judgment, not 12-6. Yes, Your Honor. Iqbal and Twombly, I think this is dealing with a whole different standard. The cases that are most known in this area are summary judgment cases. There are certainly a lot of unpublished cases. And some published, there's an Eighth Circuit case with, I believe it's Culver University, that it does, it's at the 12-56 stage. And if we say to plaintiffs, you don't have a pleading burden at the 12-56 stage, we risk going through discovery when there's not enough there. Our courts have notice pleading for a reason and say that you have to meet a certain burden at the 12-56 stage point. The second flaw of actual notice, to someone with corrective authority, which the district court didn't address, were you saying that if this case was sent back, appellant would not or should not or could not have the ability to amend the complaint if necessary on that corrective authority? Well, Your Honor, if the court understood, I understand you said you had several chances already. If the court remanded, then maybe plaintiff could. I don't know the facts that are there, but certainly plaintiff has that opportunity. But I don't know if there are the facts that they could do. They were dismissed without prejudice, right? Yes, Your Honor. It was dismissed without prejudice. And plaintiff took no steps at that point to reopen. So, we think the file is helpful. Your Honors, it's also very important to remember that in Gebser and Davis, the court said you cannot find actual notice based on constructive notice. This is an actual notice standard. When we talk about what a court should do, I apologize, what a university should do when it gets notice of sexual misconduct or a grooming, that is the standard for negligence. If we look at the Boehner decisions, the court there said Malone's complaint in Boehner should have had labels. But the fact that it did not was not sufficient. We know what NC State does when it has notice. That's in the complaint. When Locke said, I have been subjected to misconduct, NC State immediately launched an investigation. Murphy was suspended, and that investigation followed. I'll end where I began. NC State does not condone sexual misconduct of any type. The question here is a legal question. For the reasons stated, I don't believe that. That's not the issue. This is the one that's dealing with 12 v. 6. If you notice, if you make an allegation of sexual grooming, if you say it's an athlete's question, you assume there's an authority that can do so. Is that sufficient at a 12 v. 6? This is a legal question. I mean, it may be interpreted by the media and everything else as being more than what it is, but it's purely a legal question. It's not saying anything about the content of NC State or any of the individuals. It's just a matter of what you've done. I just want to make it clear, because it sounds good to say that. I know that's a good argument, but that's not what's before us. We're not answering that question at all. Or making it a statement. Your Honor, I see my time has expired. May I respond to that? Thank you, Your Honor. I agree. It is a legal question. For the reasons stated, we ask that this court affirm the description. Thank you very much. Thank you, Your Honor. I'm just going to make three or four points. The first is, you know, I think my colleague, Judge Thacker, I think the rule they're asking for, actually, this would just be a real problem. I don't think any of us want a rule where, even saying, you know, we suspect that someone is, you know, about to sexually assault a student, where that would not put the school on notice. You know, I think that's also just, that's Judge Boyd's question.  I think that's worth us going back to. I want to be clear, it's not the end of the case.  Judge, without prejudice, that you didn't do anything, but the issue is, you know, appropriately are, if you judge,  I understand the importance of that. You've already assumed it, but no need to, again, assume it. But, the question is, should you have done it anyway? That would be one of my other points, Judge Boyd, and I think that's, it's a complicated, it's complicated, when the judge also goes to court at the same time, because moving to reopen is a different standard than making another bribe, and I think that putting the onus on prejudice to seek this sort of extra discretionary step to reopen is just, it's just hard. And, you know, as part of that response, I also wanted to push back a little bit on a point that my colleague made, which is that, you know, saying, oh, they have multiple chances to attend. That's not really true, not least because you can't sort of lump all these players together.  for the second, for the second reason, there's, you know, the real reason that you would want the chance to amend is after a judge, not just, you know, the opposing counsel filed their briefings, but the guidance from the judge, their opinion about what the judge thinks the inefficiencies are. And there was no opportunity to be aware of all these inefficiencies on the same day in each other's cases, and so there was no opportunity to amend with guidance from the judge exactly what you just talked about. I'm not sure. And so I'm not sure. But I think that, you know, when you think about the sort of the way that this all happened,  you know, opinion comes out, you know, judgment gets issued, gets opposed the same day, you know, I think putting additional responsibility on things is just difficult. The third point that I wanted to make while I still have time to do so, you know, my colleague talked about sort of what they regard as inconsistencies in the complaint, including that they're, you know, they allege that there was a failure to investigate, and that's not quite what the complaint actually says. If you actually look at that paragraph 172 on page 456, it says that the, you know, they didn't investigate in Lee's knowledge in a timely and meaningful manner. And so I think that that's actually not, not even inconsistent with the idea that they might have gone through some process that resulted in having the complaint directly alleged, adjusting his duties to give him what access to no student athletes. Although again, leaving him with access to John Doe, a bunch of other student athletes and an entire team. That is interesting. Unless you have any other questions. Thank you. Thank you. Okay. We're going to find arguments here. This morning.
judges: Albert Diaz, James Andrew Wynn, Stephanie D. Thacker